**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcel Ralph Pelletier,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV11-0815-PHX-DGC<br><br>**ORDER** |

Plaintiff Marcel Ralph Pelletier filed an application for disability insurance benefits under Title II of the Social Security Act on May 12, 2007. Tr. 16. He filed an application for supplemental security income under Title XVI of the Social Security Act on May 22, 2007. *Id.* In both applications, Plaintiff alleged a disability onset date of March 15, 2007. *Id.* The applications were denied initially on October 18, 2007, and upon reconsideration on June 12, 2008. *Id.* A hearing before an administrative law judge ("ALJ") was held on October 7, 2009. Tr. 32-54. The ALJ issued his decision on December 18, 2009, finding that Plaintiff was not disabled for purposes of receiving disability insurance benefits and supplemental security income because he could perform work that existed in significant numbers. Tr. 27. This decision became Defendant's final decision when the Appeals Council denied review. Tr. 1-3. Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the Court will affirm Defendant's decision.

## I.     Background.

### A.     Physical Impairments.

Plaintiff originally ruptured his right knee quadriceps tendon in July or August 2005 and underwent surgical knee repair shortly thereafter. Tr. 367. His knee became infected and required hospitalization in October 2005. Tr. 352-53. In May 2006, Plaintiff received surgery to drain his infected right knee and remove loose hardware from his right patella. Tr. 286. A January 2007 x-ray revealed "multiple patellar defects, presumably related to prior internal fixation hardware," with fracture of the patella and surrounding soft tissue swelling and effusion. Tr. 305. The infection persisted, and Plaintiff received surgery in April 2007 to remove the patella. Tr. 314-15.

In August 2007, a state agency physician, Dr. M. Desai, opined that Plaintiff could perform a range of medium work that allowed occasional use of the right lower extremity; occasional climbing of ramps and stairs, balancing, crouching, and crawling; frequent stooping, no kneeling or climbing ladders, ropes, and scaffolds; and avoiding hazards. Tr. 377-83. An examination in September 2007 showed that Plaintiff was limping and experiencing tenderness in his right knee, but that he had no deformity or effusion. Tr. 416. He had a good range of motion with normal strength. Tr. 417. His neurological examination was normal. *Id.*

Dr. Fernando DeCastro, Plaintiff's primary care physician, referred him to the Pain Center of Arizona, where he was initially evaluated by Dr. Ramoun D. Jones on September 5, 2007. Tr. 428-33. Plaintiff was placed on narcotic pain medication (Tr. 432) and received a muscle relaxant through Dr. DeCastro (Tr. 441, 766).

A November 2007 x-ray and bone scan with Dr. Gregory Sirounian showed arthritis of the knee and moderate to severe degenerative changes, making Plaintiff a candidate for knee replacement surgery. Tr. 413, 415. Plaintiff had surgery for a right knee replacement on February 25, 2008. Tr. 551-53. After surgery, x-rays of Plaintiff's right knee showed no problems. Tr. 506-07. He experienced some stiffness. Tr. 506. He reported that his knee pain was much better than prior to surgery, but he continued to

use narcotic medication. *Id.*

In June 2008, a nonexamining state agency physician, Dr. Thomas Glodek, completed a residual functional capacity ("RFC") assessment form, in which he rated Plaintiff's work ability at the light exertional level. Tr. 517-20. He opined that Plaintiff could perform a light range of work that allowed for occasionally climbing ramps and stairs; frequently stooping, balancing, crouching, kneeling, and crawling; never climbing ladders, ropes, and scaffolds; and avoiding hazards. *Id.*

On July 7, 2008, Dr. DeCastro completed a RFC assessment. Tr. 560-61. He rated Plaintiff's pain at "moderately severe," which "seriously affects ability to function." Tr. 560. Dr. DeCastro found that Plaintiff's pain could reasonably be expected to result from objective clinical or diagnostic findings. *Id.* He marked that Plaintiff's pain frequently interfered with attention and concentration, and constantly resulted in failure to complete tasks in a timely manner. *Id.* at 560-61. At Plaintiff's hearing, the vocational expert testified that these limitations would preclude the ability to sustain work. Tr. 53.

Plaintiff had a follow-up visit with Dr. Sirounian in February 2009. At the time, his right knee was reportedly doing better, though he experienced continued pain and stiffness. Tr. 602. He was ambulatory and full weight bearing. *Id.* X-rays of his right knee showed that the knee replacement components were well fixed and without problems; x-rays of his left knee showed moderate degenerative changes. *Id.* Plaintiff underwent a series of joint fluid injections to his left knee. Tr. 596-601.

On July 6, 2009, Plaintiff saw Dr. DeCastro to check his weight. Tr. 710. Plaintiff has a medical history of morbid obesity and has been dieting, walking, and doing acquatic exercises. *Id.*

### B. Mental Impairments.

In June 2007, Plaintiff was diagnosed with depressive and anxiety disorders at Jewish Family and Children's Services. Tr. 481. He was assessed a global assessment functioning ("GAF") rating of 60, which indicates moderate limitations but is at the top of the GAF scores for the moderate range. *Id.* The GAF scale ranges from 1 to 100 and

1  reflects a person's overall psychological, social, and occupational functioning.  *See*
2  *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 598 n.1; *Vargas v. Lambert*, 159 F.3d
3  1161, 1164 n.2 (9th Cir. 1998).  A GAF score of 41 to 50 indicates severe symptoms or
4  severe difficulty in functioning and a GAF score of 51 to 60 indicates moderate
5  symptoms or moderate difficulty in functioning.  *See id.*  Nurse practitioner Gayle
6  Campbell prescribed antidepressants for Plaintiff.  Tr. 481.

7  In August 2007, Plaintiff was examined by Dr. Marc Strickland.  Tr. 389-94.  Dr.
8  Strickland reviewed Plaintiff's history and performed a mental status examination.  He
9  diagnosed major depression and assessed a GAF rating of 63.  Tr. 393.  Dr. Strickland
10 observed that "the likelihood of recovery at this time is poor because of inability for him
11 to work due to his medical condition."  *Id.*  He concluded, "I do not feel [Plaintiff] could
12 perform work activities on a consistent basis or complete a normal workday and
13 workweek, both due to his physical condition as well as his psychiatric condition.
14 Furthermore, the stress encountered in a competitive work environment may deepen his
15 depression."  *Id.*  Dr. Strickland found that Plaintiff had mild limitations in some
16 capacities, such as carrying out short and simple job instructions, responding
17 appropriately to supervision, and getting along with coworkers.  Tr. 384-87.  He assessed
18 moderate limitations in activities such as maintaining attention and concentration for
19 extended periods, performing activities within a schedule, maintaining regular attendance
20 and punctuality, sustaining an ordinary schedule without special supervision, working in
21 proximity to others without being distracted by them, and completing a normal work
22 week without interruptions from psychologically-based symptoms.  Tr. 385-86.  The
23 vocational expert at Plaintiff's hearing testified that the cumulative effect of the moderate
24 limitations would preclude work on a sustained basis.  Tr. 52.

25 In October 2007, a nonexamining psychologist, Dr. Charles Lawrence, rated
26 Plaintiff's mental impairments as not severe.  Tr. 396.  Dr. Lawrence noted that
27 Dr. Strickland's opinion that Plaintiff could not work due to his physical condition as
28 well as his psychological condition would be given "limited weight" because "Dr.

Strickland did not perform a physical exam, nor would he appear qualified to do so, and he should not be assessing limitations based upon physical conditions." Tr. 408.

### C. ALJ Hearing.

At his October 7, 2009 hearing, Plaintiff testified that he stopped work in 2007 because his "kneecap shattered and the infection set in again, and was coming and oozing out, and I went to the doctor and they took me off from work, and then I got a letter that I was terminated because of my disability." Tr. 40. The vocational expert, Dr. Mitchell, classified Plaintiff's past relevant work and responded to a hypothetical question from the ALJ that mirrored Dr. Glodek's assessment. *See* Tr. 516-23. Dr. Mitchell testified that Plaintiff could perform a job as a security guard at the light exertional level. Tr. 51. On cross examination by Plaintiff's attorney, Dr. Mitchell testified that the cumulative effect of the psychological limitations assessed by Dr. Strickland would preclude sustained work. Tr. 52. Dr. Mitchell also testified that the physical limitations assessed by Dr. DeCastro would preclude sustained work. Tr. 53.

## II. Standard of Review.

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* To determine whether substantial evidence supports Defendant's decision, the Court must review the administrative record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support Defendant's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

## III. Analysis.

Plaintiff claims that the ALJ erred by (1) rejecting the assessment of the treating physician, Dr. DeCastro, (2) rejecting the assessment of the examining psychologist,

Dr. Strickland, (3) rejecting Plaintiff's symptom testimony, and (4) finding Plaintiff's mental impairments "nonsevere."  Doc. 16, at 1-2.  Plaintiff asks the Court to exercise its discretion to remand for a determination of disability benefits.  *Id.* at 2.

### A. The ALJ did not err by rejecting Dr. DeCastro's pain assessment.

Dr. DeCastro was Plaintiff's treating physician.  He rated Plaintiff's pain at "moderately severe," which "seriously affects ability to function."  Tr. 560.  He opined that Plaintiff's pain would frequently interfere with attention and concentration, and that Plaintiff would constantly experience deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner.  Tr. 561.  Dr. Mitchell, the vocational expert at Plaintiff's hearing, testified that the limitations noted by Dr. DeCastro in his July 2008 RFC assessment would prevent Plaintiff from sustaining work.  Tr. 53.  The ALJ considered Dr. DeCastro's RFC assessment.  Tr. 24.  The ALJ gave Dr. DeCastro's opinion "little weight as it appears to be based primarily on subjective complaints and is not supported by clinical signs, diagnostic examinations and other evidence[.]"  Tr. 25.

The opinions of treating physicians are given greater weight than the opinions of non-treating physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  An ALJ is not bound to accept a treating physician's opinion; however, "[w]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  Where there is conflicting medical evidence, the ALJ must state specific and legitimate reasons supported by substantial evidence in the record.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).  The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his own interpretation thereof, and making findings.  *Reddick*, 157 F.3d at 725 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  Plaintiff argues that the clear and convincing standard should apply "because the ALJ did not rely on any *substantial* evidence that contradicted the treating physician's assessment."  Doc. 16, at 19.  Plaintiff correctly

notes that the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of an examining or treating physician. *Ryan v. Comm'r of Soc. Sec'y*, 528 F.3d 1194, 1202 (9th Cir. 2008). The ALJ did rely in part on the opinion of Dr. Glodek, a nonexamining physician, that Plaintiff could perform physical activity at the light exertional level. Tr. 24. But he also comprehensively discussed medical evidence in the record that conflicted with Dr. DeCastro's assessment, and therefore only needed to state specific and legitimate reasons for discounting Dr. DeCastro's opinion.

The ALJ noted that Dr. DeCastro's opinion "appears to be based primarily on subjective complaints[.]" Tr. 25. Dr. DeCastro did not assess Plaintiff's ability to do work-related physical activities and left much of the form blank. Tr. 557-59. He explained, "I do not do functional capacity evaluation." Tr. 557. The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is "brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Given that Dr. DeCastro did not perform a physical functional capacity evaluation, the ALJ reasonably inferred that the pain functional capacity assessment was based on Plaintiff's subjective complaints. *See Batson v. Comm'r of Soc. Sec'y*, 359 F.3d 1190, 1195 (9th Cir. 2004) (permitting an ALJ to give minimal weight to a treating physician's opinion when it was based on subjective complaints without supportive objective evidence).

The ALJ cited clinical evidence that contradicted Dr. DeCastro's assessment. Specifically, the ALJ considered a June 2008 treatment note following Plaintiff's right knee surgery, which reported that the knee appeared "well-healed with no focal tenderness," "minimal soft tissue swelling and no effusion or deformity," and "no sign of anterior, posterior, varus, or valgus instability[.]" Tr. 23-24. In a February 2009 treatment note entered after Dr. DeCastro's evaluation, Dr. Sirounian reported that the Plaintiff still had some pain and stiffness, but that he "was ambulatory and full weight bearing," and that he now alleged that his left knee was starting to hurt him more than the

right knee, though he had not yet sought specific treatment for the left knee. Tr. 24. "The [Plaintiff] denied locking and instability and the pain was essentially with weight bearing activities, and not much pain at rest." *Id.*

The ALJ discussed the facts and medical evidence in detail, provided his own interpretation of the evidence – that Dr. DeCastro's opinion was inconsistent with the medical record – and made findings accordingly. *See Reddick*, 157 F.3d at 725. The Court concludes that the ALJ met his burden of providing specific and legitimate reasons for discounting Dr. DeCastro's assessment.

**B.     The ALJ did not err by rejecting Dr. Strickland's psychological assessment.**

Dr. Strickland, Plaintiff's examining psychologist, opined that Plaintiff could not perform work activities on a consistent basis or complete a normal workday and workweek "both due to his physical condition as well as his psychiatric condition." Tr. 393. Dr. Mitchell, the vocational expert, testified that the cumulative effect of the moderate limitations assessed by Dr. Strickland would preclude sustained work. Tr. 52. Plaintiff argues that the ALJ erred by rejecting Dr. Strickland's assessment. Doc. 16, at 23.

**1.     Plaintiff's GAF Scores.**

First, Plaintiff argues that the ALJ should not have consulted medical texts outside the record and should not have treated the GAF scores as predictors of ability to work because they were not assessed in a work setting. Doc. 16, at 24. Plaintiff does not cite any evidence in the record indicating that the ALJ did either of these things, nor does the Court's review of the ALJ's opinion reveal support for either of Plaintiff's assertions. The ALJ did not consider Plaintiff's GAF scores in isolation, but rather considered Plaintiff's entire mental health treatment record. Examinations indicated that Plaintiff was fully oriented and that his memory appeared normal. *See, e.g.*, Tr. 447, 452, 772. Plaintiff had no problems with grooming, dressing, and hygiene, and was able to take care of his girlfriend's children and household pets. Tr. 155-57. He could prepare simple

meals, perform light chores, drive, shop, and manage his own finances. *Id.* He attended weekly club meetings, socialized, and attended appointments. Tr. 158. He did not have difficulty paying attention or following instructions. Tr. 159. Dr. Strickland noted that Plaintiff had linear and goal-directed thoughts, did not exhibit looseness of association, denied auditory or visual hallucinations, appeared to have intact recent memory, could think abstractly, and appeared to have good judgment. *Id.* Dr. Strickland noticed that Plaintiff's past memory appeared somewhat suspect in that he recalled one out of three recent presidents, but could recite his phone number and birthday from memory. *Id.* Dr. Strickland diagnosed Plaintiff with a GAF scale score of 63, which indicates only mild symptoms or mild difficulty in social or occupational functioning. Tr. 19-20. Plaintiff's mental health treatment record showed that he was generally assessed with a GAF scale score of 60. Tr. 20.

The Court concludes that the ALJ properly gave little weight to Dr. Strickland's opinion after finding it inconsistent with Plaintiff's GAF scores and overall mental health treatment record. *See Thomas v. Barnhart*, 278 F.3d at 956-57 (an ALJ need not accept a treating doctor's opinion that is unsupported by clinical findings).

### 2. Dr. Strickland's Qualifications.

Second, Plaintiff argues that the ALJ misread Dr. Strickland's statement that Plaintiff could not perform work activities on a consistent basis or complete a normal workday and workweek "both due to his physical condition as well as his psychiatric condition." Doc. 16, at 25; Tr. 393. The ALJ found that "Dr. Strickland's qualification and specialty to make an assessment with regard to physical limits is unclear and this particular assessment is not given any weight." Tr. 25. Plaintiff concedes that, as a psychologist, Dr. Strickland was not qualified to opine as to the effects of Plaintiff's physical condition. Doc. 16, at 25. Plaintiff argues instead that the intended meaning of Dr. Strickland's statement was that Plaintiff's psychiatric impairments were intertwined with his physical impairments. *Id.*

This Circuit has made clear that courts "must uphold the ALJ's decision where the

1  evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The Court therefore defers to the ALJ's interpretation of Dr. Strickland's statement. The ALJ properly discounted Dr. Strickland's opinion because he was not qualified to make an assessment of Plaintiff's physical condition.

### C.  The ALJ did not err by rejecting Plaintiff's symptom testimony.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. Tr. 22. Once Plaintiff produces objective medical evidence of an underlying impairment, the ALJ may not reject his subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of the pain. *Moisa v. Barnhart*, 367 F.3d 882, 884 (9th Cir. 2004). If the ALJ finds that Plaintiff's pain testimony is not credible, the ALJ must make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude that the ALJ rejected the Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony. *Id.* "If there is no affirmative evidence that [Plaintiff] is malingering, the ALJ must provide clear and convincing reasons for rejecting [Plaintiff's] testimony regarding the severity of symptoms." *Id.* Plaintiff argues that the ALJ simply discussed the medical evidence without specifying how those findings contradicted Plaintiff's testimony, and thus failed to meet the clear and convincing standard. Doc. 16, at 27.

The ALJ considered evidence from Plaintiff's treatment record, diagnostic examinations, and clinical signs that contradict his testimony. The treatment record indicates that after Plaintiff's February 2008 right knee replacement surgery, he experienced some stiffness but that the pain was much better than prior to surgery. Tr. 22. Plaintiff still required his usual pain medications, but denied problems with the surgical incision and was ambulatory with no specific complaints. *Id.* Plaintiff then alleged that his left knee began to hurt him more than his right knee, and received

injections on the left knee as well as medication that was effective in alleviating the pain symptoms. *Id.* Diagnostic examinations revealed that Plaintiff's knee replacement surgery was largely successful. His knee components were well-positioned and fixed without any evidence of problems after the surgery. Tr. 23. Clinical signs showed that Plaintiff appeared healthy and experienced no acute distress. *Id.* The right hip was normal, and the right knee had moderate to severe tenderness, but no swelling. *Id.* Although Plaintiff testified that he had back problems and was treated for back pain, Plaintiff's spine appeared normal and had a full range of motion. *Id.* The record does not contain objective evidence of any severe back impairment beyond Plaintiff's subjective complaints. Tr. 22. Additionally, Plaintiff's daily activities are inconsistent with his pain testimony. He has no problems with grooming, dressing, and hygiene, and is able to prepare simple meals, perform light chores, and attend motorcycle club meetings and appointments. Tr. 24.

The Court concludes that the ALJ has stated clear and convincing reasons for finding Plaintiff not credible with respect to his statements regarding the intensity, persistence, and limiting effects of his symptoms. The Court is satisfied that the ALJ has provided sufficiently specific reasons showing that Plaintiff's testimony was rejected on permissible grounds and was not arbitrarily discredited.

**D.     The ALJ did not err by finding Plaintiff's mental impairments "nonsevere."**

Plaintiff claims that the ALJ erred by finding that Plaintiff's mental impairments were "nonsevere" because Plaintiff's mental impairments surpass a *de minimus* threshold. Tr. 16, at 28. Plaintiff argues that a GAF score of 60 reflects moderate, not nonsevere, limitations. *Id.*

The ALJ assessed four function areas in determining that Plaintiff's mental impairments were nonsevere: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).

In daily living, the ALJ found that Plaintiff has no limitation. Tr. 19. He has no

problem with grooming, dressing, and hygiene, and is able to take care of his girlfriend's children and household pets. *Id.* He is able to prepare simple meals, perform light chores, drive a vehicle, shop, and manage finances. *Id.*

In social functioning, the ALJ likewise found that Plaintiff has no limitation. *Id.* He lives with his girlfriend and her children, attends motorcycle club meetings once a week, socializes with others, and attends appointments. *Id.*

In concentration, persistence, or pace, the ALJ found that Plaintiff has mild limitations. *Id.* In so finding, the ALJ noted that Plaintiff does not need reminders to take care of personal needs and grooming, or to take medication. *Id.* He does not have problems paying attention and can follow written and oral instructions, but cannot handle stress or changes to routine well. *Id.*

In episodes of decompensation, the ALJ found that Plaintiff has experienced no episodes of decompensation which have been of extended duration. Tr. 20.

The ALJ then concluded that because Plaintiff's medically determinable mental impairment causes no more than "mild" limitations in any of the first three functional areas and no episodes of decompensation in the fourth area, the mental impairment is nonsevere. *Id.* Because there is substantial evidence supporting the ALJ's finding, the Court will not substitute its own determination.

**IT IS ORDERED:**

1. Defendant's decision denying disability insurance benefits and supplemental security income (Tr. 16-27) is **affirmed**.

2. The Clerk is directed to terminate this action.

Dated this 18th day of January, 2012.

_____
David G. Campbell
United States District Judge